UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 23-cr-354 (TJK) |
| | : | |
| JERRY DANIEL BRAUN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT FOR SELECTIVE ENFORCEMENT**

Defendant has filed another late motion recycling arguments that have been repeatedly rejected by courts in this district.[1] Here, his argument is selective enforcement—that he has been prosecuted for, *inter alia,* attacking police officers with a wooden beam not because that is precisely what he did—during a riot that threated Congress—but because of his political views. ECF No. 90. Defendant's claim is false, and the Court can, and should, swiftly dispatch with his motion, both because it is untimely and on the merits. Indeed, defense counsel filed a nearly

---

[1] *See United States v. Judd*, 579 F. Supp. 3d at 5-9 (D.D.C. 2021) (McFadden, J.); *United States v. Mijares,* No. 24-cr-41 (ABJ), 2024 WL 4103710, at *5 (D.D.C. Sept. 6, 2024)*; United States v. Brown*, 22-cr-170 (CKK), ECF No. 105 (D.D.C. June 10, 2024); *United States v. Young,* 23-cr-241 (GMH), ECF No. 59 (D.D.C. June 17, 2024); June 17, 2024 Minute Entry, *United States v. Brett,* No. 22-cr-11 (RJL); July 12, 2023 Minute Order, *United States v. DaSilva*, 21-cr-564 (CJN); *United States v. Miller*, 21-CR-119 (CJN), ECF No. 67 (D.D.C. Dec. 21, 2021); *United States v. Bennett,* 21- CR-312 (JEB), 2023 WL 6847013 (D.D.C. Oct. 17, 2023); *United States v. McHugh*, 21-CR- 453 (JDB), 2023 WL 2384444, at *13 (D.D.C. Mar. 6, 2023); *United States v. Padilla*, 21-CR-214 (JDB), 2023 WL 1964214, at *4-6 (D.D.C. Feb. 13, 2023) (same);; Apr. 27, 2023 Minute Order, *United States v. Costianes*, 21-CR-180 (RJL); *United States v. Groseclose*, 21-cr-311 (CRC), ECF No. 67 (D.D.C Oct. 27, 2023); *United States v. Brock,* 628 F. Supp. 3d 85, 103 (D.D.C. 2022) (JDB), *aff'd*, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 25, 2023); *United States v. Rhodes*, 22-CR-15 (APM), 2022 WL 3042200, at *4- 5 (D.D.C. Aug. 2, 2022).; *United States v. Griffin,* 549 F. Supp. 3d 49, 58 (D.D.C. 2021) (McFadden, J.).

identical motion in *United States v. Fischer,* 22-cr-11 (RJL), which Judge Leon rejected in a one-paragraph Minute Entry on June 17, 2024. The same result should follow here.

Braun's motion is particularly ill suited to the facts here, where many of his examples and much of his language allege the government's selective enforcement of 18 U.S.C. § 1512(c)(2) – a charge Braun no longer faces. *See, e.g.*, ECF No. 90 at 1 ("In the 20 years since 18 U.S.C. § § 1512(c)(2) was enacted, hundreds of persons, who have espoused progressive political views have disrupted Congressional hearings being held in the United States Capitol yet not a single one of those persons has been charged with this 20-year felony.").

To the extent Braun does focus on one charge currently pending against him (civil disorder), his comparators—other individuals who were not charged with that violation—are not similarly situated. Braun's comparators all fail because January 6 posed a unique threat: rioters "attacked the Capitol in broad daylight" and "endangered hundreds of federal officials in the Capitol complex. Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters…" *United States v. Judd*, 579 F. Supp. 3d 1, 8 (D.D.C. 2021). Many of Braun's comparators fail for the additional reason that they did not enter a restricted area and commit multiple attacks on officers, let alone with a dangerous weapon. Fundamentally, none of the comparators "committed roughly the same crime under roughly the same circumstances." *Id.* (citation omitted). Because Defendant thus fails to show that his comparators are similarly situated, and because many of his complaints center on a charge no longer at issue in this case, he fails to meet the heightened standard required under *United States v. Armstrong*, 517 U.S. 456 (1996) to make out a selective enforcement claim. The Court should deny his motion.

## FACTS

The Court is familiar with the civil disorder that occurred on January 6, 2021 at the U.S. Capitol. This defendant participated. He entered the restricted area of the U.S. Capitol grounds at approximately 12:55 p.m. Within minutes, he made his way to the West Plaza of the Capitol, where proceeded to verbally and physically engage with officers during the critical first hour of the riot. He swung a metal cane, which he had brought to use as a weapon, at officers. Defendant called officers "[expletive] traitors." He wrestled with officers for control over a metal bike barricade. And used an eight-foot long 2x4 plank to first threaten and then thrust at a line of officers. This case is now set for trial on charges that include Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) and (b); and three felony violations of 18 U.S.C. § 1752(a) and (b)(1)(A), because Defendant also had and used a wooden plank in the restricted area; and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).[2]

## ARGUMENT

Braun's motion fails to meet the threshold evidentiary showing to overcome the presumption of regularity afforded by the long-established case law to prosecutorial charging decisions. He cannot show that he is similarly situated to the various comparators he cites, and thus fails to establish the requisite discriminatory effect the law requires to obtain even discovery on a

---

[2] Braun's summary of the charges minimizes his conduct, omitting the two assault counts Braun and the charges for carrying a dangerous weapon. *See* ECF No. 90 at 2 (describing the 1752 charges as misdemeanors), 3 (asserting that "The Indictment does not allege that Braun damaged or destroyed any property. Nor does it allege that he injured any law enforcement officer or other person.").

selective prosecution claim, let alone dismissal.

### A. Legal Framework

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465.

A request for discovery in support of a claim of selective prosecution imposes a significant burden on the government, as it "requires discovery into the Government's files, an effort that will 'divert prosecutors' resources' and possibly disclose their strategy." *Judd*, 579 F. Supp. at 4-5 (quoting *Armstrong*, 517 U.S. at 468). "[A] defendant must[thus] present 'at least a colorable claim' of selective prosecution before any discovery is permitted." *Id.* at 5 (quoting *United States v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (per curiam)). A colorable claim requires "some evidence tending to show the existence of the essential elements" of selective prosecution.

*Armstrong*, 517 U.S. at 468 (internal quotation marks and citations omitted). "This 'colorable claim' standard is a 'significant' and 'rigorous' one not easily surmounted." *Judd*, 579 F. Supp. 3d at 5 (citing *Armstrong,* 517 U.S. at 464).

A claim of selective prosecution seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *Armstrong*, 517 U.S. at 463, "such as race, religion, or other arbitrary classification," *id*. at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

"[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e*., based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Irish People, Inc.*, 684 F.2d at 946. "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

More recently, in the First Amendment context, the D.C. Circuit has held that, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, _ F.4th __, 2023 WL 5209556, at *12 (D.C. Cir. Aug. 15, 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)) (citations omitted). Discriminatory effect – a showing that the defendant has been treated differently from similarly situated individuals – is still required.

No court in this district has granted such a motion in the January 6 context.

**B. Braun's Motion Fails Because He Cannot Establish He is Similarly Situated to Any Comparators**

Braun fails to make the heightened showing necessary to warrant dismissal or discovery based on his selective prosecution claim. He alleges that the government selectively targeted him for prosecution based on his political beliefs. But he fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated him differently than other similarly situated defendants, or (2) any such disparity implicates his political association.[3]

With respect to the first prong of *Armstrong*, the defendant must first set forth evidence that the prosecution "had a discriminatory effect," *Armstrong*, 517 U.S. at 465, by showing that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People*, 684 F.2d at 946 (citation omitted). A district court judge has previously explained that an individual may be similarly situated to the defendant if*:*

> [He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008).[4] "Defendants are similarly situated when their circumstances present no distinguishable legitimate

---

[3] As a threshold matter, the Court should disregard Braun's many allegations concerning the Section 1512(c)(2) charge, which has already been dismissed; and should not consider his motion as relating to any charges other than Count One (Section 231(a)(3)), as lacks any argument about those counts.

prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). The phrase "similarly situated" is "narrowly" interpreted. *Judd*, 579 F. Supp. 3d at *4 (quoting *Stone*, 394 F. Supp. 3d at 31). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27-28 (internal citations omitted).

### 1. Braun is not similarly situated to the Supreme Court or congressional hearing protesters he cites.

Braun's conduct bears little resemblance to the conduct he cites of protestors at Supreme Court nomination proceedings and other hearings at the Capitol. ECF No. 90 at 8-20. None of those other instances involved anywhere near the scale of violence or threats to the peaceful transfer of power presented by Braun and the January 6 riot. Moreover, Braun does not show that the other events he mentions would fulfill all the legal prerequisites for 18 U.S.C. § 231(a)(3), such as meeting the statutory definition of a "civil disorder" under 18 U.S.C. § 232(1), affecting commerce, and involving acts obstructing officers, for example. A journalist's photo of a single protestor and a description that she (or perhaps others) were involved in an unspecified "skirmish" with law enforcement as she (or they) were removed from a committee room, for example, does not indicate any effect on commerce or a federally protected function, nor any sort of civil disorder (to the extent it meets the statutory definition at all), let alone any of these nearly on the scale of what took place at the Capitol on January 6. ECF No. 90 at 11. And some of Defendant's examples cite no acts obstructing or interfering with law enforcement at all. *See, e.g.,* ECF No. 90 at 20

7

(defendants yelled out during Supreme Court argument).

Braun's conduct on January 6, in fact, places him in a class of offenders worse than a protester who permissibly entered the Capitol and then disrupted a committee hearing by yelling and had to be removed. Braun's actions were not just disorderly, they were acts of violence. Braun, charged with two violations of 18 U.S.C. § 111, menaced police with a wood plank and a cane, amid a violent confrontation between rioters and the outnumbered police force on the West Front. *See also United States v. Brown*, 22-cr-170 (CKK), ECF No. 105 at 8 (noting that the alleged purpose of the January 6th defendants' actions—obstructing the certification of the Electoral College vote—is also a factor that justifies the differences in prosecutorial behavior.)

And beyond Braun's specific conduct was the conduct of the mob he joined, a factor that multiple courts have considered, even in cases where a defendant did not, unlike Braun, personally commit an assault. For example, in *Brock,* Judge Bates found that the demonstrably greater threat the mob posed to hundreds of federal officials, including Congress and the Vice President, compared with the threat posed by the Justice Kavanaugh protests, was "certainly a legitimate prosecutorial consideration." *Brock,* 628 F. Supp. 3d at 89, 102 (quoting *Judd*, 579 F. Supp. 3d at 8).

Brock, like Braun, "does not describe any similarly situated defendants given the difference in violence, threat to citizen safety, and scope." *Id.* at 103; *see also* Opinion and Order at 4–5, *Groseclose*, No. 21-cr-311 (CRC) (D.D.C. Oct. 27, 2023) ((denying selective prosecution argument comparing January defendant to "demonstrators arrested at now-Justice Kavanaugh's confirmation hearings, activists removed from a congressional hearing after objecting to Medicaid cuts, environmental protesters who allegedly impeded access to the Capitol in an effort to force a vote on a climate emergency resolution, and persons who attacked a federal courthouse in Portland,

Oregon, in the summer of 2020; stating, "Other courts have considered and rejected many of these same arguments before . . . finding that these protesters were not similarly situated to the rioters who stormed the Capitol on January 6, 2021. This Court will not revisit this well-trodden ground, as it agrees in full that it is a tall task to find similarly situated individuals here considering that the January 6 riot was an unprecedented assault on the Capitol and on our democratic institutions.").

Moreover, as Judge Harvey recently pointed out, Braun's assertion that he has been treated differently than Justice Kavanaugh protestors based on his political affiliation is "peculiar." Mem. Op. and Order, *United States v. Young*, 23-cr-241 (GMH), ECF No. 59. At 6 (D.D.C. filed June 17, 2024). "Justice Kavanaugh was nominated by former President Donald Trump, then the head of the Executive Branch of the federal government, and his confirmation hearings (and the attendant protests) took place during that administration. Defendant does not explain how protesting Justice Kavanaugh's confirmation 'express[ed] a viewpoint favored' by that administration." *Id.*

### 2. Braun is not similarly situated to those who participated in summer 2020 riots or protests or clashed with police during the 2017 inauguration of Donald Trump

Braun also argues the government has treated participants in the January 6 attack more severely than the subjects who participated in riots in Portland in the summer of 2020. ECF No. 211 at 21-25. Again, other judges on this Court have rejected similar arguments. For instance, Judge McFadden, in denying a similar motion, observed that "[a]lthough both Portland and January 6 rioters attacked federal buildings, . . . the Portland defendants primarily attacked at night, meaning that they raged against a largely vacant courthouse." *Judd*, 579 F. Supp. at 7. "In contrast," Judge McFadden explained that "the January 6 rioters attacked the Capitol in broad daylight," as

9

"[t]housands of congressional staffers," "hundreds of legislators and the Vice President" were inside. *Id*. Because "the[se] actions endangered hundreds of federal officials in the Capitol complex," *id*., Judge McFadden held that the defendant in that case "failed to make a credible showing of different treatment of similarly situated persons"—as *Armstrong*'s first prong demands. *Id*. at *6 (internal quotation marks omitted). Defendant is not similarly situated to his other examples because they did not involve (1) large-scale riots (2) involving an invasion of the Capitol's restricted area with (3) brutal attacks on law enforcement officers (4) as members of Congress and staffs evacuated and hid that (5) threatened the peaceful transfer of power.[4] *See also Miller*, 21-cr-119 (CJN), ECF No. 67.

Braun also references the Lafayette Square protest in June 2020—intimating that the government treated him more severely than individuals who engaged in vandalism and looting attendant to that protest. ECF No. 90 at 25-26. But "[f]or these same reasons, any comparison to those who protested outside the White House in the summer of [2020] fails." *Rhodes*, No. 22-CR-15 (APM), 2022 WL 3042200, at *5. This contention fails to show disparate treatment because the cited instances of looting and vandalism did not threaten the safety of nearly as many individuals who were harmed or threatened on January 6, nor did it involve an extensive riot that threatened fundamental aspects of our democratic system of government. *See. Mijares,* No. 24-cr-41 (ABJ), 2024 WL 4103710, at *5 (denying selective prosecution claim and noting "the threat to the foundation of our democracy – the peaceful transfer of power – that was posed by the protest at the Capitol while the certification of the election was underway, and the building was closed to

---

[4] Defendant's description of the Portland prosecutions is difficult to follow. For example, he claims that 22 individuals were charged with violating 18 U.S.C. § 111(a), but that 25 cases were then dismissed. This does not compute. ECF No. 90 at 25.

the public").

Defendant also makes false factual claims about the Department of Justice's response to the May/June 2020 protests, further undermining his argument that he has been singled out. He claims that "our government settles with the Lafayette Park rioters" rather than prosecute them. ECF No. 90 at 26.[5] This is incorrect. Within days of the protest outside the White House on May 29, 2020, Attorney General William Barr issued a public statement condemning the violence in the strongest possible terms and announcing that "federal law enforcement actions will be directed at apprehending and charging the violent radical agitators who have hijacked peaceful protest and are engaged in violations of federal law."[6] Reporting by the Associated Press reflects that "more than 300 federal cases [arose] from the protests" over racial injustice, and "dozens of people charged [were] convicted of serious crimes and sent to prison."[7] Thirty-three protestors were specifically charged with assaulting, impeding, or intimidating a federal employee or officer,[8] one

---

[5] Defendant also cites *Tinius v. Choi*, 77 F.4th 691, D.C. Cir. 2023 in support of his claims that other rioters have not been charged with violating 18 U.S.C. § 231. ECF No. 90 at 2. But the protestors in *Tinius* were "standing on a public street peacefully protesting" *Id.* at 695, which is behavior that would not give rise to a Section 231 violation—unlike Braun's conduct, which involved entering a restricted area, joining a riot, and assaulting, resisting, or impeding officers, including with weapons.

[6] Attorney General William P. Barr's Statement on Riots and Domestic Terrorism, THE UNITED STATES DEPARTMENT OF JUSTICE (May 31, 2020), available at https://www.justice.gov/opa/pr/attorney-general-william-p-barrs-statement-riots-and-domestic- terrorism.

[7] Alanna Durkin Richer, Michael Kunzelman, & Jacques Billeaud, *Records rebut claims of unequal treatment of Jan. 6 rioters.* ASSOCIATED PRESS NEWS (Aug. 30, 2021), *available at* https://apnews.com/article/records-rebut-claims-jan-6-rioters-55adf4d46aff57b91af2fdd3345dace8.

[8] Alanna Durkin Richer, Colleen Long, & Michael Balsamo, *AP finds most arrested in protests aren't leftist radicals.* ASSOCIATED PRESS NEWS (October 20, 2020), *available at* https://apnews.com/article/virus-outbreak-race-and-ethnicity-suburbs-health-racial-injustice-7edf9027af1878283f3818d96c54f748.

of the same criminal offenses with which the grand jury has charged this defendant. Several rioters during the summer of 2020 were prosecuted federally in D.C. for their respective criminal offenses. *See, e.g.*, *United States v. Pace*, 20-cr-104-RC (Molotov cocktail lit outside of a police station); *United States v. Avery*, 20-cr-109-ABJ (spray painting of the Lincoln Memorial); *United States v. Rodas*, 20-cr-148-BAH (bank burglary); *United States v. Jason Charter*, 20-cr-135-DLF (attempted statue destruction); *United States v. Tarner*, 20-cr-183-RCL (arson at the Supreme Court); *United States v. Maxey*, 20-cr-152-ABJ (bank robbery).

Finally, Defendant's motion includes pictures of posters calling for protests of the 2017 inauguration of President Trump, suggesting that he believes those individuals are valid comparators as well. ECF No. 90 at 4-5. Judge Jackson recently found that such a claim by a January 6 defendant "strains credulity"—and that defendant made specific arguments about protestors' actual conduct, not relying simply on images of posters, like Braun. *Mijares*, No. CR 24-0041 (ABJ), 2024 WL 4103710, at *4. She ticked off several salient differences that apply equally to Braun, and distinguish him from inauguration protesters: he was on restricted property, not public streets, and he committed an assault, to say nothing of " the threat to the foundation of our democracy" the January 6 riot posed. *Id.* at *5 n.2. She found that Mijares's "motion contains no facts to support that characterization" that he was similarly situated to inauguration protesters, *id,* at *5. Braun's effort, far sketchier, fails for the same reason.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                DC BAR NO. 481052

By:   /s/ *Alexis J. Loeb*
       JASON B.A. MCCULLOUGH
       DC Bar No. 998006; NY Bar No. 4544953
       ALEXIS J. LOEB
       CA Bar No. 269895
       Assistant United States Attorneys
       601 D Street NW
       Washington, DC 20530
       (202) 252-7233
       jason.mccullough2@usdoj.gov