# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 23-cr-354 (TJK)** |
| | : | |
| **v.** | : | **18 U.S.C. § 231(a)(3)** |
| | : | **18 U.S.C. § 111(a)(1)** |
| | : | **18 U.S.C. §§ 111(a)(1) & (b)** |
| **JERRY DANIEL BRAUN,** | : | **18 U.S.C. §§ 1752(a)(1) and (b)(1)(A)** |
| | : | **18 U.S.C. §§ 1752(a)(2) and (b)(1)(A)** |
| | : | **18 U.S.C §§ 1752(a)(4) and (b)(1)(A)** |
| **Defendant.** | : | **40 U.S.C. § 5104(e)(2)(D)** |
| | : | **40 U.S.C. § 5104(e)(2)F)** |
| | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Jerry Daniel Braun, with the concurrence of the defendant's attorneys, agrees and stipulates to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.     The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.     On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

8.      As a result of the civil disorder in Washington, D.C. on January 6, 2021, Safeway, a grocery store chain, was forced to close its stores in the District of Columbia earlier than planned on January 6, 2021. As a result, Safeway reported significantly lower sales on January 6, 2021, both as projected and compared to the same date in prior years.

*The Defendant's Participation in the January 6, 2021, Capitol Riot*

9.      Defendant Jerry Daniel Braun traveled from California to Washington, D.C. on January 5, 2021.

10.     On the morning of January 6, 2021, Braun traveled to the National Mall with plans to attend a "Stop the Steal" rally.

11.     Braun listened to the beginning of former President Trump's speech, including remarks in which former President Trump made extensive statements encouraging Vice President Pence to "do the right thing" and "send it back to the states to recertify." Braun understood that Vice President Pence was at the Capitol on January 6, 2021, to preside over the certification of the 2020 Presidential Election.

12.     Sometime after 12:11 p.m., Braun left the rally. Braun arrived in the area near Garfield Circle shortly before 12:53 p.m. When Braun arrived at the area near Garfield Circle, the fences and bike racks that bordered the Capitol were still erect.

13.     At approximately 12:55 p.m., Braun entered the restricted area of the U.S. Capitol after walking through a gap in the bike rack fencing demarcating the restricted perimeter that had been created by other rioters who had pushed aside the fencing.



14.     The crowd advanced toward outnumbered officers, and the USCP officers were forced to retreat.

15.     Less than one minute later, officers attempted to re-form a police line behind a set of bike rack and snow fencing along the pedestrian walkway near Garfield Circle. The crowd advanced toward the officers and tore down the bike rack and snow fencing. Braun was approximately fifty feet behind the front of the crowd as the barricades were ripped apart. Braun crossed over the trampled barricades just seconds after the crowd dismantled them. Due to the fencing and bike racks, Braun understood that he was not permitted on Capitol grounds. Braun is circled below in yellow, and the dismantled fence is identified in the red box below.



16.    Braun advanced into the West Plaza of the Capitol at approximately 1:00 p.m.

17.    By approximately 1:06 p.m., Braun made his way to the front of the crowd. USCP officers were attempting to form a police line and stop the crowd from advancing further. As shown below and circled in yellow, Braun lowered his head and pushed with the crowd against the line of officers.



18.    At approximately 1:11 p.m., several individuals in the crowd again attacked the line of officers, and a small group of rioters dragged one of the officers into the crowd. With the officer and rioters at his feet, Braun twice raised and swung his cane down at the individuals on the ground. Braun's first of the two strikes is circled in yellow in the image below.



19.     Shortly after this incident, Braun approached a line of officers and pointed at them as he told them, "Fuck you, traitor!" and "Fucking traitor. Traitor!" Braun then yelled at the officers, "We pay your fucking pay!"

20.     At approximately 1:13 p.m., a Civil Disturbance Unit from the D.C. Metropolitan Police Department (MPD) arrived in the West Plaza of the Capitol. The MPD officers had been called to assist USCP officers to expel the rioters from the restricted area of the Capitol. The MPD officers and USCP officers worked together to form a police line and began to push the crowd back. Among other techniques, the MPD and USCP officers tried to use bike racks create a police line and push back the crowd.

21.     At approximately 1:15 p.m., individuals in the crowd attempted to pull a section of bike rack away from the officers. MPD Officer L.L. pursued the rioters who had grabbed the bicycle rack in an attempt to recover it.  As officers and rioters struggled over the bike rack, Braun joined in the effort to pull the bike rack away from officers. As Officer L.L. was trying to

trying to recover the bicycle rack, Braun, circled in yellow below, swung his metal cane and struck the metal bike rack multiple times.



22.     In addition to swinging his metal cane at the officers, Braun also grabbed a portion of the bike rack and joined in the effort to pull the bike rack away from officers. Braun is identified with a red arrow with his left hand circled in yellow in the image below. The image below is a still shot from the body worn camera footage of MPD Officer L.L.; the red arrow points at Braun.



23.     Shortly before 1:27 p.m., Braun picked up an eight-foot long 2x4 wooden beam from the West Plaza. Within minutes, Braun stood less than ten feet from the police line, as other members of the crowd continued to engage with officers. As officers struggled to maintain control over the police line, Braun pointed his 2x4 at the line of officers. Braun and his 2x4 are identified below in the yellow box.



24.     Approximately two minutes later, Braun again pointed his 2x4 at the line of officers. On this occasion, Braun thrust the eight-foot 2x4 into the line of officers. The two images below show Braun as he turned the 2x4 parallel to the ground and then thrust it to the right into a line of USCP officers.

 

25.     Braun then moved away from the police line. At approximately 1:30 p.m., Braun used his 2x4 to jab a man who was holding a camera with the word "PRESS" on the front and back his black helmet. Braun then approached the man and struck the man in the head with his left hand. Braun then again jabbed the man with his 2x4 before the man retreated and moved to a different area of the West Plaza. Braun is circled below in yellow as he struck the "PRESS" photographer in the head with his hand and then used the 2x4 to jab at the man.

 

26.     Braun remained on Capitol Grounds, inside the restricted area, until at least 4:00 p.m. Braun ordered an Uber to take him back to his hotel, and a driver picked him up shortly after 7:00 p.m. Braun and the Uber driver began a conversation, and she offered him help to clean a wound he received on his face. Braun stated that he "tore down the barricades" at the U.S. Capitol "so that we could get to the Capitol." He said he was at the Capitol because he knew

Congress was certifying the Electoral College vote count, and he wanted Trump to remain in office.



*Braun's Written Communications Before and After January 6*

27.     Braun was subscribed to an automated text marketing chat connected to a "Stop the Steal" campaign, and regularly read the messages he received. These text messages describe efforts to oppose the certification of President-Elect Biden and plans for the rally on January 6.

28.     On December 31, 2020 Braun texted a friend, saying, "Good to hear. Im [sic] flying to DC, on 1/5/2021 for the stop the steal rally, gonna be wild. Shopped for some body armor to protect from stabbing and all backordered. You know where I can buy some body armor." That same day, Braun sent multiple other text messages inquiring where he could find body armor for his trip to D.C. for January 6. He also looked for a cane, and praised one he saw online as a "good headbanger."

29.     On January 6, 2021 at 9:00 p.m. Braun sent the following message, "We tried to stop the steal but they wouldn't let us in, where were you, the writing your next speech, we are

sick of all the talk." The next day, Braun then followed up with another message that read, in part, "Bunch of talking cowards."

30.    While returning home to California on January 7, 2021, Braun sent a message in which he stated, in part, "taxing [sic] to airport now, head feels good, ready for another 5 rounds."

31.    After returning to California on January 7, 2021, Braun sent several text messages expressing pride in his actions at the Capitol. Among other things, Braun shared images of himself with an abrasion over one of his eyes, and Braun included messages in which he said, among other things:

- o "Went to dc and helped occupy the capitol"
- o "[o]ccupied the capital on the 6th"
- o "Hand to hand combat"
- o "got a black eye in DC while occupying the capital"
- o "the violence worked, they blame trump for instigating and they ban Trump and they lose by overplaying their hand"

32.    Braun sent a video with the last text, "Occupied the capitol," which showed rioters climbing up the stairs, using remnants of the barricades as ladders to climb higher up the side of the stairs, and showed officers being assaulted.

*Elements of the Offenses*

33.     The parties agree that Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count

One), requires the following elements:

  a. First, the defendant knowingly committed an act with the intended purpose of
     obstructing, impeding, or interfering with one or more law enforcement officers;
  b. Second, at the time of the defendant's act, the law enforcement officer was
     engaged in the lawful performance of their official duties incident to and during a
     civil disorder; and
  c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely
     affected commerce or the movement of any article or commodity in commerce, or
     the conduct or performance of any federally protected function.

34.     The parties agree that Assaulting, Resisting, or Impeding Certain Officers, in

violation of 18 U.S.C. § 111(a)(1) (Count Three), requires the following elements:

  a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered
     with Officer L.L., an officer of the Metropolitan Police Department;
  b. Second, the defendant did such acts forcibly;
  c. Third, the defendant did such acts voluntarily and intentionally;
  d. Fourth, Officer L.L. was assisting officers of the United States who were then
     engaged in the performance of their official duties; and
  e. Fifth, the defendant made physical contact with the victim or acted with the intent
     to commit another felony.

35.     The parties agree that Assaulting, Resisting, or Impeding Certain Officers with a

Dangerous or Deadly Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count Four), requires

the following elements:

  a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered
     with officers;
  b. Second, the defendant did such acts forcibly;
  c. Third, the defendant did such acts voluntarily and intentionally;
  d. Fourth, the officers were officers of the United States who were then engaged in
     the performance of their official duties or were assisting officers of the United
     States who were then engaged in the performance of their official duties.; and
  e. Fifth, in committing such acts, the defendant intentionally used a deadly or
     dangerous weapon.

36.     The parties agree that Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Six), requires the following elements:

      a. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.
      b. Second, the defendant did so knowingly.
      c. Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

37.     The parties agree that Disorderly and Disruptive in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Seven), requires the following elements:

      a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.
      b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.
      c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.
      d. Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

38.     The parties agree that Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A) (Count Eight), requires the following elements:

      a. First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.
      b. Second, the defendant did so knowingly.
      c. Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

39.     The parties agree that Disorderly or Disruptive Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Nine), requires the following elements:

      a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

    b.  Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

    c.  Third, the defendant acted willfully and knowingly.

40.    The parties agree that Act of Physical Violence at the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Ten), requires the following elements:

    a.  First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

    b.  Second, the defendant acted willfully and knowingly.

*Defendant's Acknowledgments*

41.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits that his conduct satisfies all the elements of 18 U.S.C. § 231(a)(3), Civil Disorder (Count One).  Specifically, the defendant admits that he committed acts with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers who were engaged in the lawful performance of their official duties incident to and during a civil disorder which obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce and the conduct and performance of any federally protected function, specifically, the U.S. Secret Service's Protection of the Vice President.

42.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 18 U.S.C. § 111(a)(1), Assaulting, Resisting, or Impeding Certain Officers (Count Three). Specifically, the defendant admits that he forcibly assaulted Officer L.L., an officer of the Metropolitan Police Department, who was a person assisting any person designated in 18 U.S.C. § 1114, and that the assault involved the intent to commit another felony, specifically, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).  The defendant further admits that the metal cane he used in the assault is a deadly and dangerous weapon.

43.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 18 U.S.C. §§ 111(a)(1) and (b), Assaulting, Resisting, or Impeding Certain Officers with a Dangerous or Deadly Weapon (Count Four). Specifically, the defendant admits that he forcibly assaulted any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties by thrusting an eight-foot 2x4 wood plank into a police line manned by U.S. Capitol Police officers. Braun further admits that the wood plank he used in the assault is a deadly or dangerous weapon.

44.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count Six). Specifically, Braun admits that he knowingly entered and remained in restricted grounds, that is, any posted, cordoned-off, or otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so, and that, during in and in relation to the offense, he used and carried a deadly or dangerous weapon, that is, an eight-foot 2x4 wood plank.

45.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 18 U.S.C. § 1752(a)(2) and (b)(1)(A), Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count Seven). Specifically, Braun admits that engaged in disorderly or disruptive conduct in, any restricted building or grounds; that he did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; that his conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions; and that he defendant knowingly used and carried a deadly or dangerous weapon during and in relation to the offense; specifically, an eight-foot 2x4 wood plank.

46.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 18 U.S.C. § 1752(a)(4) and (b)(1)(A), Act of Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (Count Eight). Specifically, Braun admits that he knowingly engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds, and that he knowingly used or carried a deadly or dangerous weapon during and in relation to the offense; specifically, an eight-foot 2x4 wood plank.

47.     As relevant to Counts Six, Seven, and Eight, the defendant, Jerry Daniel Braun, knowingly and voluntarily admits that he knew he had entered a posted, cordoned-off, or otherwise restricted area, and that he knew the Vice President was or would be temporarily visiting that area.

48.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building or Grounds (Count Nine). Specifically, the defendant admits that he engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds, that he did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, and that he acted willfully and knowingly.

49.     The defendant, Jerry Daniel Braun, knowingly and voluntarily admits to all the elements as set forth above of 40 U.S.C. § 5104(e)(2)(F), Act of Violence in a Capitol Building or Grounds (Count Ten). Specifically, the defendant admits that he engaged in an act of physical violence within the Capitol Buildings or Grounds, and that he acted willfully and knowingly.

## DEFENDANT'S  ACKNOWLEDGMENT

I, Jerry Daniel Braun, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/8/24

Jerry Daniel Braun
Defendant

## ATTORNEY'S  ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/8/24

George Pallas
Attorney for Defendant

Date: 10/8/24

John L. Machado
Attorney for Defendant