# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:23-cr-00354 |
| ) | |
| JERRY DANIEL BRAUN, ) | |
|   Defendant ) | |
| _____/ | |

## DEFENDANT BRAUN'S MOTION TO REMAIN ON BOND PENDING SENTENCING

The Defendant, JERRY DANIEL BRAUN, by and through undersigned counsel, moves this Court to allow him to remain on bond pending sentencing in this matter pursuant to 18 U.S.C.§ 3145(c). As grounds therefore, the Defendant would show:

## I. Introduction

Mr. Braun pleaded guilty without a plea agreement to all eight counts against him. The plea hearing occurred on October 8, 2024. BRAUN was arrested on August 23, 2023. When the authorities notified him of the pending arrest warrant, he voluntarily turned himself in. He was placed on pretrial bond and has strictly complied with his conditions of release. In view of his age coupled with his lack of a recent criminal history, consistent history of employment, medical issues, and the unique context that gave rise to his criminal conduct, BRAUN maintains there are exceptional

circumstances that weigh in favor of his continued release on bond pending sentencing.

## II. Legal Standard

18 U.S.C. 3145(c) authorizes the Court to release a defendant upon a conviction of a felony drug offense or crime of violence pending sentencing if there are "exceptional reasons" why detention is not appropriate. A violation of 18 U.S.C. 111(b) is considered a crime of violence for purposes of the Bail Reform Act. *See, e.g., United States v. Klein*, 533 F.Supp. 3d 1, 10 (D.D.C. 2021). The statute does not further define what constitutes an exceptional reason. Likewise, the legislative history is "sparse and uninformative." *United States v. DiSomma*, 951 F.2d 494, 497 (2d. Cir. 1991). As such, lenity favors broadly construing what may constitute an exceptional circumstance in this context. Judge Randolph C. Moss recognized that "a wide range of factors may bear upon the [§3145(c)] analysis," and a district court has "broad discretion … to consider all the particular circumstances of the case before it and [to] draw upon its broad 'experience with the mainsprings of human conduct.'" *United States v. Harris*, 451 F.Supp. 3d 64, 71 (D.D.C. 2020) (citations omitted). The statute provides the Court with "considerable discretion" to make a finding of "exceptional reasons" based on a defendant's "purely personal circumstances." *United States v. Kaquatosh*, 252 F.Supp. 2d 775, 778 (E.D. Wisc. 2003).

## III. Exceptional Reasons

With this framework in mind, BRAUN maintains there are exceptional circumstances that weigh in favor of release pending sentencing.

### a. Offense Conduct

Rather than relitigate the entirety of the events of one of the most tragic days in our nation's history, counsel for Mr. Braun intends to briefly address Braun's specific actions on that day. The most serious offense BRAUN has pleaded guilty to is the one count of 18 U.S.C. 111(a)(1) and (b)) for Assaulting, Resisting, Impeding a Law Enforcement Officer with a Dangerous Weapon. BRAUN recognizes that this offense is categorically deemed a crime of violence for purposes of the Bail Reform Act. This charge, contained in Count Four of the Indictment, involves the use of a 2x4 piece of wood approximately 8 feet in length. With respect to this Count, BRAUN acknowledges that he wielded this wooden beam over the crowd of protestors and in areas where police officers were positioned. Notably, this beam *was not brought* to the Capitol with the intention of using it as a dangerous weapon. Rather, he had picked the beam up off the ground *at the Capitol*. His conduct was serious to be sure, particularly in view of how heavily outnumbered the police officers were at the time. However, the video footage does not clearly show BRAUN making physical contact with any officer with this beam, much less physically injuring anyone other than himself. While this will be addressed in greater depth

during the sentencing phase, it is nonetheless appropriate to consider how actually violent his crime of violence was in making a release determination. From a review of the video footage from outside the Capitol, BRAUN is amongst the least boisterous of the participants while others around him are engaging in physical violence. He is not chanting but does yell at the police on one occasion.

Upon leaving the grounds, his uber ride from just north of the Capitol that evening to his hotel room was telling. While tending to an eye injury, his conversation with a young, biracial female driver with diametrically opposed political views was downright cordial. He conceded to her that Joe Biden was the president. As is Braun's nature, he left the driver a substantial tip. Consistent with this unlikely human connection, the young woman parked her vehicle and assisted Braun inside the hotel lobby with his injury.

**b. Braun's arrest**

Again, consistent with his likable nature, Braun offered no resistance with the agents who first served a search warrant at his residence and later interviewed him after his arrest. In November 2021, during the search, Braun readily admitted he was at the Capitol. After being asked by the agents if BRAUN had anything he wanted to tell them before they departed the search location, BRAUN responded, "Guilty." When asked what he was guilty of, BRAUN responded, "Everything."

Likewise in April 2022, BRAUN was cooperative with the agents. One agent stated:

"Every single person that we talked to and they talked about you said that you were a good guy, a good all-around guy, a patriot, someone who is very proud to be in this country and wants to defend his country and everything and I wholeheartedly agree with that kind of sentiment right."

During the interview Braun referred to the FBI as the "thinking man's" police department and concluding the interview by thanking the agents for their professionalism.

### c. Braun's Personal History and Characteristics

Jerry Daniel Braun is 70 years old. And for his entire life—both before and after January 6—he has lived his life as a productive family man. He is truly the "rock" in which his extended family revolve around. He developed and patented the "shotgun shock," an aftermarket shock absorber he installs on expensive Harley Davidson motorcycles. It's a family business which includes his daughter Sara Braun. As the Court well knows, the death of Braun's long-time life and business partner, Jessica Kennedy, brought Braun to the brink of financial and personal ruin. Recently, Braun has been revived, both mentally and financially with a reborn dedication to his business. Allowing the Defendant to remain on home confinement pending sentencing will allow him to further restabilize the business for his family to continue without him.

**c. Medical Issues**

Mr. Braun has the typical ailments one would expect upon reaching the age of 70. He takes medication for blood pressure and for his prostate. He believes he has the beginnings of dementia but that remains undiagnosed. Mr. Braun is currently at a medical appointment today, October 11, 2024.

It is not necessary to repeat the documented emotional toll the loss of his life and business partner had on him. The Court saw, with its own eyes, the dramatic weight loss he experienced causing Braun to appear in court with now oversized clothing. He has only begun the slow process of healing. Release on home confinement will allow him to regain his mental and physical health prior to any term of incarceration.

## IV. Argument

Again, Braun recognizes that the 18 U.S.C. § 111(b) has been deemed a crime of violence for purposes of the Bail Reform Act under the categorical approach. While the much-criticized categorical approach often produces incongruent results that cut in a defendant's favor, in this instance, the opposite holds true. Braun is guilty of committing a felony crime of violence for purposes of the Bail Reform Act even though he did not injure anyone at all. What is clear is that the Act's overarching concerns are *risk of flight and dangerousness*, and Braun does not present a credible risk of flight or risk of danger to others. Considering his personal history and characteristics, including his consistent history of employment as a small

businessman, very old criminal record, and educational history, Braun is an exceedingly optimal candidate for continued release on bond. Braun was very much caught up in the fervor of the moment and made a series of misguided decisions for which he will bear the consequences. He understands and expects to receive a sentence of incarceration in this matter. To be clear, this request for continued release is not a misplaced hope or attempt to delay or avoid the inevitable. However, a period of home confinement until his sentencing date in January will allow him to get his business affairs in order, proactively provide for his family and attend to any necessary medical needs.

## V. Conclusion

For these reasons, BRAUN requests that this Court allow him to remain on bond pending sentencing in this matter.

Respectfully submitted,

GEORGE T. PALLAS, P.A
Counsel for Jerry Daniel Braun
Bar No: FL0108
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com

By:/s/ *George T. Pallas*
 GEORGE T. PALLAS, ESQ.

# **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing.

By:/s/ *George T. Pallas*
GEORGE T. PALLAS, ESQ
