**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERRY DANIEL BRAUN,<br><br>*Defendant*. | Criminal Action No. 23-354 (TJK) |

**MEMORANDUM ORDER**

On October 8, 2024, Defendant Jerry Daniel Braun pleaded guilty to eight federal crimes for his actions at the United States Capitol on January 6, 2021. Because at least one of those counts constituted a crime of violence, the Court ordered that Braun be detained pending sentencing under 18 U.S.C. § 3143(a)(2). ECF No. 99. Braun now moves to set aside that detention order, seeking to be released on bond pending sentencing. ECF No. 100. The Government opposes his motion, arguing that "18 U.S.C. § 111(b) triggers mandatory detention pending sentencing under 18 U.S.C. § 3143(a)(2), and[] the defendant presents no exceptional circumstances meriting a deviation from this statutory requirement." ECF No. 101 at 1. The Court agrees with the Government and so will deny Braun's motion.

18 U.S.C. § 3143(a)(2) states that district courts "shall order that a person who has been found guilty of [a crime of violence] . . . be detained" pending sentencing. By using the word "shall," the statute "creates an obligation impervious to judicial discretion." *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). Thus, § 3143(a)(2) establishes that a district court *must* order that defendants who have committed a crime of violence—like Braun—be detained, subject only to the specific exceptions listed in § 3143(a)(2). Braun does not argue that either of those exceptions applies, which makes sense, as they require, among other things, that he show either that "there is a substantial likelihood that a motion for acquittal or new

trial will be granted" or that "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person."  18 U.S.C. § 3143(a)(2)(A)(i)–(ii).

Still, Braun asserts that the Court may order that he be released pending sentencing since, he alleges, "18 U.S.C. § 3145(c) authorizes the Court to release a defendant upon a conviction of a . . . crime of violence pending sentencing if there are 'exceptional reasons' why detention is not appropriate."  ECF No. 100 at 2.

The Court is skeptical that 18 U.S.C. § 3145(c) operates as a loophole that would allow the Court to release Braun.  Begin with the text:[1] the title and first two sentences of subsection (c) strongly suggest that it applies only to "appeal[s]" heard by a court of appeals.  *See* 28 U.S.C. § 1291 (outlining the jurisdiction for "[t]he courts of appeals").  A party's request that a district court reassess one of its own decisions is generally considered a request for "reconsideration," not an appeal.  *Compare Motion for Reconsideration*, *Black's Law Dictionary* (12th ed. 2024), *with Appeal*, *Black's Law Dictionary* (12th ed. 2024) (noting how an appeal normally involves "a higher authority" reviewing a lower court's decision).  Thus, if § 3145(c) applies only to "appeals," it would not apply to Braun's situation here.

That said, Braun, relying on *United States v. Harris*, 451 F. Supp. 3d 64 (D.D.C. 2020), maintains that the last sentence of § 3145(c) does empower district courts to consider "exceptional

---

[1] 18 U.S.C. § 3145(c) reads:

(c) Appeal From a Release or Detention Order.—

An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

reasons" when deciding whether to order detention.  ECF No. 100 at 2.  And, as the court said in *Harris*, "[t]he overwhelming majority of the judicial decisions interpreting § 3145(c)" agree with Braun's interpretation.  *See* 451 F. Supp. 3d at 69.  In so doing, those courts focused on § 3145(c)'s use of the phrase "judicial officer," which the statute defines as "any person or court authorized . . . to detain or release a person before trial or sentencing or pending appeal in a court of the United States."  18 U.S.C. § 3156(a)(1).  Since that definition "unambiguously encompasses district judges," and since "there is no indication within the statute that the definition is to be applied in a manner that would exclude district judges," those courts have concluded that, despite the statute's somewhat "misleading" placement in a subsection purportedly governing only appeals, "the language in the subdivision, providing that a judicial officer may order release if certain conditions are met, is unambiguous" and applies to district courts.  *United States v. Meister*, 744 F.3d 1236, 1237–38 (11th Cir. 2013); *see also, e.g.*, *United States v. Goforth*, 546 F.3d 712, 714–15 (4th Cir. 2008).

Again, the Court has its doubts about whether § 3145(c) operates in this way.  That the "exceptional reasons" exception appears in a section and subsection with headings and text expressly dedicated to "appeal[s]" is strong contextual evidence that district court judges are not "judicial officer[s]" as that term is used in § 3145(c). *United States v. Chen*, 257 F. Supp. 2d 656, 660 (S.D.N.Y. 2003); *see Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018). And 18 U.S.C. § 3156(a)(1) itself states that its default definition for "judicial officer" does not apply when "otherwise indicated."  True, headings cannot supplant otherwise unambiguous statutory text.  *Merit Mgmt. Grp., LP*, 583 U.S. at 380.  But the Court is skeptical that the text unambiguously encompasses district judges in the situation Braun's case presents.  Moreover, applying § 3145(c) to district courts would create a conflict between that subsection and § 3143.  And a "court interpreting a statute should, whenever possible, read the provision in harmony with other

provisions to which it naturally relates." *Potomac Plaza Terraces, Inc. v. QSC Prod., Inc.*, 868 F. Supp. 346, 351 (D.D.C. 1994). As discussed above, under § 3143, district courts must, subject to two exceptions inapplicable here, detain defendants like Braun. 18 U.S.C. § 3143(a)(2). By providing a baseline rule of detention and then providing for two enumerated exceptions to that rule, it is reasonable to infer that other possible exceptions that were "not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Braun's reading of § 3145(c) significantly alters the detention scheme that would otherwise apply in cases like his.

In any event, the Court need not decide whether § 3145(c) grants it the authority for which Braun argues. Even if it does, he has not shown "exceptional reasons" that justify permitting him to remain on bond pending sentencing.

Courts agree that the "exceptional reasons" standard creates a high bar for relief, permitting release only in the face of "circumstances that are 'clearly out of the ordinary, uncommon, or rare.'" *United States v. Sharp*, 517 F. Supp. 2d 462, 464 (D.D.C. 2007) (quoting *United States v. Koon*, 6 F.3d 561, 563 (9th Cir.1993) (Rymer, J., concurring in denial of rehearing en banc)). Thus, even if § 3145(c) is an "escape hatch" a district court may rely on to release a defendant, it is still "quite narrow and only rarely successfully invoked." *United States v. Geraghty*, No. 22-cr-096-10 (CKK), 2023 WL 6199085, at *2 (D.D.C. Sept. 22, 2023). And that makes sense, given § 3143's strong presumption of post-conviction detention. *See United States v. Wiggins*, 613 F. Supp. 3d 348, 353 (D.D.C. 2020). For this reason, "[i]n this jurisdiction, section 3145(c) has almost only applied to release due to the COVID-19 pandemic." *Geraghty*, 2023 WL 6199085, at *2.

Braun argues that his circumstances are "exceptional" for four reasons: (1) his offense conduct was not as serious as others who participated in the attack on the U.S. Capitol on January 6,

2021; (2) he was cooperative with law enforcement agents on several occasions, including when they executed a search warrant at his residence; (3) he is older and owns a small business, and (4) he "has the typical ailments one would expect" as his age.  ECF No. 100 at 3–6.  No doubt, the Court would weigh all these points if it were considering his release under 18 U.S.C. § 3142(g).  But none meet § 3145(c)'s high bar.

First, it is common for a defendant to be able to point to others who committed more serious criminal conduct—there is simply nothing exceptional about that.  More than that, though, Braun's argument fails on its own terms.  If anything, Braun's conduct on January 6, 2021, as reflected by his plea of guilty to violating 18 U.S.C. § 111(b), was exceptional for its seriousness, not the opposite.

Second, that Braun was cooperative—rather than combative—with law enforcement agents on several occasions is not exceptional, either.  At bottom, Braun merely refrained from interfering with officers executing a search warrant and chose to speak to them about his conduct on January 6, 2021.  And although he said some things suggesting his own guilt, he also denied involvement in violence that day.  His situation presents nothing close to the kind of "extraordinary assistance" leading to a downward departure so "out of the ordinary" it could influence the "exceptional reasons" calculus.  *Sharp*, 517 F. Supp. 2d at 464 (quoting *United States v. Mitchell*, 358 F. Supp. 2d 707, 709 (E.D. Wis. 2005)).

Third, although Braun's efforts to "restabilize [his] business for his family to continue without him" are commendable, they do not constitute exceptional reasons justifying release.  ECF No. 100 at 5.  Such "purely personal" circumstances are very rarely exceptional, because

"incarceration regrettably inflicts family hardship on many, if not most, defendants." *Geraghty*, 2023 WL 6199085, at *3 (quoting *United States v. Smith*, 34 F. Supp. 3d 541, 554 (W.D. Pa. 2014)).

Fourth, "it is a rare case in which health conditions present an 'exceptional reason'" under § 3145(c). *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008). And that is especially so when there is no reason to believe that a defendant could not be treated while detained. *See, e.g.*, *United States v. Bloomer*, 791 F. Supp. 100, 102 (D. Vt. 1992); *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In his motion, Braun cites only "the typical ailments one would expect upon reaching the age of 70," including that he takes medication "for his prostate." ECF No. 100 at 6. Understandably, he would prefer to "regain his mental and physical health" at home before incarceration. *Id*. But he does not explain why "the medical facilities and services of the Bureau of Prisons" would be insufficient to maintain his health. *See Rodriguez*, 50 F. Supp. 2d at 722.

In his reply, Braun mentions for the first time that he was diagnosed—apparently since the filing of his motion—with a specified disease that requires treatment, and he attaches a page of supporting medical records under seal. ECF No. 103-1; ECF No. 104 at 7. That page, a three-sentence letter from his "attending physician," asserts only that, based on unspecified "lab results," Braun requires "treatment" involving further diagnostic testing and that "any type of incarceration will interfere with the treatment." ECF No. 103-1 at 2. The letter gives no further explanation about how the disease was diagnosed, its severity, the nature of Braun's course of treatment, or why a federal prison's medical facilities would be unable to conduct the same course of treatment. *See United States v. Goss*, No. 3:12-cr-66-TAV-HBG-1, 2015 WL 914708, at *1 (E.D. Tenn. Mar. 3, 2015). So again, at least at this point, Braun has provided "no indication that [his] condition

6

cannot be properly treated at the Bureau of Prison's medical facilities." *Rodriguez*, 50 F. Supp. 2d at 722.[2]

A case cited by Braun, *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), provides a useful illustration of when a defendant's medical condition could amount to true "exceptional reasons," even if § 3145(c) was inapplicable in that case since it involved pretrial, not post-conviction, release. In that case, the defendant was suffering from multiple gun-shot wounds. *Id.* at 144. In releasing the defendant to receive treatment in a hospital, the court found not only that the defendant's "present physical condition [was] grave and [could] deteriorate if not carefully treated" but also that "the Bureau of Prisons [could not] provide the necessary medical care defendant require[d]." *Id.* at 146. Indeed, in *Cordero Caraballo*, the Bureau of Prisons *refused to accept the defendant* into its care until his condition had improved. *Id.* at 145. Nothing the Court can glean from a single page of medical records suggests Braun's medical situation is remotely similar.

For all these reasons, Braun has not "clearly shown that there are exceptional reasons why [his] detention would not be appropriate." 18 U.S.C. § 3145(c).

\*        \*        \*

Thus, it is hereby **ORDERED** that Braun's Motion to Remain on Bond Pending Sentencing, ECF No. 100, is **DENIED**. It is further **ORDERED** that Braun shall comply with the Court's Detention Order, ECF No. 99. Braun shall comply with any directions provided by Pretrial Services, U.S. Probation, or the U.S. Marshals Service to self-surrender today.

---

[2] Thus, this case is not like several during the COVID-19 pandemic, where courts in this district found that the effects of the pandemic on detained defendants with certain pre-existing health issues led to genuine "concerns about jail facilities' general inability to protect detainees." *United States v. Johnson*, 464 F. Supp. 3d 22, 37 (D.D.C. 2020).

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 18, 2024